# Exhibit E

# The Loev Law Firm, PC

CORPORATE, SECURITIES, PUBLIC/PRIVATE OFFERINGS, CONTRACTS, MERGERS & ACQUISITIONS, LITIGATION

David M. Loev  
John S. Gillies  
Timothy J. Henderson*  
Christian, Smith & Jewell**  

6300 West Loop South, Suite 280  
Bellaire, Texas 77401  

Telephone (713) 524-4110  
Facsimile (713) 524-4122  
www.loevlaw.com  

* Of Counsel, Board Certified Civil Trial Law (Texas)  
** Of Counsel

July 28, 2017

Mr. Allan Ligi  
Mesa Strategies, Inc  
18145 Old Coach Drive  
Poway, California 92064-6632

VIA EMAIL AT  
ALLANX100@YAHOO.COM

Re: **Probility Media Corporation**

Dear Mr. Ligi:

Our firm serves as counsel to Probility Media Corporation, a Nevada corporation (the "Company", which term as used herein includes the company's subsidiaries).

We have been advised that Mr. Lawrence Isen ("Isen") was the Company's sole contact in negotiating the settlement and assignment with Mesa Strategies, Inc. ("Mesa"). We have been advised that the Company did not have any direct contact with any representatives of Mesa. We have also been advised that Isen represented to the Company that you were the President of Mesa. Our client relied upon the oral representations of Isen that the shares represented by the settlement agreement would be sold into the open market and that Isen would help build a robust market for the Company's shares via social media broadcasts and the use of electronic mailing lists with the goal of encouraging individuals to purchase the Company's common stock.

It is now apparent to the Company from the complaint filed against Isen by the Securities and Exchange Commission (SEC) and others on July 12, 2017[1], the indictment filed against Isen by the U.S. Attorney's Office[2] and Isen's resulting arrest on charges of securities fraud, that Isen was planning to utilize the illegal methods outlined in the SEC complaint and indictment in order to create a market for the Company's common stock. Had the Company been aware that Isen was planning to utilize illegal methods to encourage individuals to purchase its common stock, our client would have never agreed to the settlement or filed the declarations with the Court.

The Company retained Isen's firm, FSC, LLC, to assist the Company with investor relations and identifying sources of capital. The settlement agreement with Mesa was entered into largely due to the fact that the Company had entered into the agreement with Isen's firm. Based upon Isen's representations, our client agreed to a below market conversion price in order to

---

1 https://www.sec.gov/litigation/complaints/2017/comp-pr2017-124.pdf  
2 https://www.justice.gov/usao-edny/pr/corporate-insiders-and-managers-long-island-boiler-room-indicted-orchestrating-147

Mesa Strategies Inc.
July 28, 2017
Page 2 of 2

facilitate the transaction. Prior to entering into the settlement agreement, the Company was raising funds at $0.15 per share. The Company agreed to a below market conversion price of $0.04 per share at Isen's insistence and in reliance upon his oral representations. The Company would not have agreed to this conversion price otherwise. The Company has since cancelled the contract with Isen.

Mesa has submitted one conversion notice for 2,000,000 shares of common stock under the note agreement to date. It is our understanding that Mesa is attempting to lift the restrictions on the stock certificates it has received. The Company believes that the restrictions on the shares should not be lifted since the settlement was based upon representations that the Company now has reason to believe were false, misleading and potentially fraudulent.

The Company is prepared to rescind the settlement agreement and the issuance of the shares if the Company is not able to reach a mutually agreed amendment to the settlement with Mesa. Accordingly, the Company is requesting that Mesa (a) accept a conversion price of $0.15 per share, (b) return one of the two stock certificates issued and accept a new certificate for 333,333 shares, and (c) agree to a two year lock up/leak out agreement, which calls for no sales during the first year and allows the holder to sell 10% of the average market volume per month for the following twelve months. The Company believes that this is equitable because the conversion price would be at the same price other early investors received and it is still well below the Company's recent trading price of $0.60 per share.

We hope to resolve this quickly and amicably, provided that if we don't hear back from you by close of business on Wednesday, August 9, 2017, the Company will take legal action to rescind the prior settlement agreement and cancel the shares issued previously, due to Mr. Isen's misrepresentations and planned future illegal activities. If the Company is forced to go back to court it will also seek damages, attorney fees and court costs and where applicable punitive damages. Hopefully this recourse is not necessary; however, the Company has its own interests to protect and will do so vigorously if necessary.

This letter shall not serve as a waiver of any legal and/or equitable right or remedy available to the Company, all of which are herein expressly reserved.

Yours very truly,

David M. Loev