PAUL D. MURPHY (SBN 159556)
MURPHY ROSEN LLP
100 Wilshire Boulevard, Suite 1300
Santa Monica, California  90401-1142
Telephone:  (310) 899-3300
Facsimile:  (310) 399-7201
Email:  pmurphy@murphyrosen.com

ALAN S. BASKIN (SBN 013155) (*Pro Hac Vice Being Submitted*)
BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, AZ 85012
Telephone: (602) 812-7979
Facsimile: (602) 595-7800
Email:  alan@baskinrichards.com

Attorneys for Defendant Alpine Securities Corp.

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PROBILITY MEDIA CORPORATION, a Nevada corporation,<br><br>Plaintiff,<br><br>v.<br><br>LAWRENCE D. ISEN, an individual, MESA STRATEGIES, INC., a Nevada corporation, ALLAN J. LIGI, an individual, ALPINE SECURITIES CORPORATION, a Utah corporation, FSC, LLC, a California limited liability company, and DOES 1-10, inclusive.<br><br>Defendants. | CASE NO.  17-CV-02583-CAB-WVG<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT ALPINE SECURITIES CORPORATION'S MOTION TO DISMISS UNDER RULE 12(B)(6)**<br><br>**[PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT]**<br><br>[Filed Concurrently with Request for Judicial Notice] |

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................. 2

II. BACKGROUND ................................................................................................. 3

III. ARGUMENT ...................................................................................................... 5

   A.  Alpine Is Immune From Liability By Section 8115, Which Protects Securities Intermediaries And Brokers From Liability To A Person With An Adverse Claim. ........................................................................................................... 5

   B.  None Of The Three Exceptions To The Immunity Protections Of U.C.C. § 8-115 Apply. ............................................................................................................ 7

IV. CONCLUSION ................................................................................................. 13

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-399-7201

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*H & R Block Financial Advisors, Inc. v. Express Scripts, Inc.*,
   426 F. Supp. 2d 656 (E.D. Mich. 2006) .............................................................. 12, 13

*MyECheck, Inc. v. Sweetsun Intertrade, Inc.*,
   2015 WL 6163456 (E.D. Cal. Oct. 19, 2015) ....................................... 10, 11, 13, 14

**Statutes**

Cal. Com. Code § 8115 ......................................................................... 2, 4-9, 11-13

Cal. Com. Code § 8503(e), cmt. 3 ................................................................................. 12

U.C.C. § 8-102(a)(1), (9), (14) ...................................................................................... 8

U.C.C. § 8-115 .............................................................................................. 4, 9, 12

U.C.C. § 8-115, cmt. 3 ............................................................................................. 9, 10

U.C.C. § 8-115, cmt. 5 ............................................................................................. 11, 12

U.C.C. § 8-503(e), cmt. 3 ................................................................................................ 12

Federal Rule of Civil Procedure 12(b)(6) ........................................................................ 4

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-399-7201

ii          *PRINTED ON RECYCLED PAPER*
*DEFENDANT ALPINE SECURITIES CORPORATION'S MOTION TO DISMISS COMPLAINT*

# I.

# INTRODUCTION

Plaintiff ProBility Media Corporation ("ProBility") and Defendant Mesa Strategies, Inc. ("Mesa") obtained court approval of a settlement agreement they negotiated and that resulted in Mesa obtaining ProBility stock. ProBility now claims Mesa defrauded it. Defendant Alpine Securities Corporation ("Alpine") played no part in the ProBility-Mesa transaction, the negotiations, or the court proceedings; its role was limited to serving as the brokerage firm Mesa used to sell the shares it obtained via Court Order from ProBility. Under U.C.C. § 8-115,[1] Alpine is immune from liability for claims in connection with its activities as a conduit for the transfer of securities on behalf of its customers.

ProBility has failed to tell the Court that this is its third attempt to assert its rights; it dismissed the first two lawsuits, one in Utah state court (with the dismissal occurring at a preliminary injunction hearing); and a second in the Superior Court of California for the County of San Diego. ProBility cannot be rewarded for sitting on its rights and forum shopping, particularly here, as Alpine told ProBility months ago, in its very first communication, that it would honor an injunction. Under Section 8115(1), ProBility's failure to timely obtain an injunction is fatal to its claims against Alpine, as Alpine is immune unless it allowed stock sales after being served with an injunction or similar process, or its conduct fell within one of the other two exceptions to Section 8115 immunity—neither of which apply here.

Alpine moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), as the Complaint fails to state a claim upon which relief can be granted.

---

[1] The Probility-Mesa agreement includes a choice-of-law provision designating California law as controlling. [Doc. No. 1, Compl., Ex. A at ¶ 20.] U.C.C. § 8-115 has been adopted without amendment in California. *See* Cal. Com. Code § 8115 ("Section 8115"). Alpine will refer to the statute as "U.C.C. § 8-115" or "Section 8115."

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-399-7201

## II.

## BACKGROUND

According to the Complaint, ProBility needed money and along with Lawrence Isen, who allegedly acted on behalf of Mesa, engineered a scheme to avail themselves of an exemption (known as a Section 3(a)(10) exemption) from the registration provisions of the Securities Act of 1933. The Section 3(a)(10) exemption would allow certain debt owed by ProBility to be converted to freely tradeable stock, which would be issued to Mesa. [Doc. No. 1, Compl., ¶¶ 25-28, 36.] [2] In turn, Mesa (allegedly through Isen) would "stabilize the price of ProBility's stock through generating interest with investors and investment professionals . . . and limiting the amount of public float through strategic, gradual sales of Mesa's stock in ProBility." [*Id.* at ¶ 28.]

Executing the Section 3(a)(10) scheme consisted of the following steps, which occurred in May and June of 2017: (1) Mesa purchased the ProBility debt that was to be converted to stock; (2) Mesa filed an agreed-to complaint against ProBility in California state court for breach of contract on the note Mesa had just purchased; (3) ProBility and Mesa executed a June 9, 2017 settlement agreement, contingent upon court approval, that allowed for the conversion of the note into ProBility stock in the name of Mesa; and (4) on June 20, 2017, after the parties filed a joint ex parte motion for approval, the Court held a fairness hearing and approved the settlement agreement, paving the way for the ProBility shares to be issued to Mesa. [Compl., ¶ 36; Exs. A-C.]

Mesa obtained certificates for 2 million ProBility shares dated June 21, 2017 and later deposited 1 million shares with brokerage firm Alpine, which, after the restrictions on the share certificate were lifted, is where the complained-of sales occurred. [*See* Compl., Ex. F.] In addition to providing Alpine with the settlement

---

[2] All future references to the Complaint or an exhibit to the Complaint will be as follows: [Compl., ¶___.] or [Compl., Ex. ___.]

and court order, Mesa obtained an opinion of counsel that the ProBility-Mesa transaction was lawful, which took the form of a June 26, 2017 letter to Signature Stock Transfer and Alpine from attorney Nicholas Coscia. [*Id.* at pages 6-9.]

ProBility alleges that on or about July 12, 2017, it learned that Isen was the subject of parallel federal criminal and SEC proceedings involving alleged market manipulation. [Compl., ¶ 40.] ProBility sent Mesa a July 28, 2017 "cease and desist letter" objecting to the restrictions on the Mesa shares being lifted and making a settlement proposal where, among other things, Mesa would receive fewer shares than in the original agreement and also agree to a two-year "lock up/leak out agreement . . ." [Compl, Ex. E.] ProBility never contacted Alpine to express any concerns until September 28, 2017, two and one-half months after uncovering the indictment and other details about Isen's past. [*Id.* at ¶¶ 53-54.]

In response, Alpine told ProBility that it would honor any order ProBility obtained "from a court of competent jurisdiction" to stop trading in the Mesa shares. [*Id.* at ¶¶ 54.] What ProBility did not tell the Court is that on October 2, 2017, four days after it contacted Alpine, ProBility filed a lawsuit in state court in Utah, and on October 5, 2017 the court issued a Temporary Restraining Order ("TRO") "ceasing all transactions" in the Mesa shares ("Case I"). [October 2, 2017 *ProBility v. Mesa, et al.* Complaint in the Third Judicial District in and for Salt Lake County, State of Utah; October 5, 2017 TRO; Request for Judicial Notice ("RJN"), Exs. 1-2.] ProBility makes no claim that Alpine violated the Utah TRO; it does not even mention the Utah action in the Complaint.

The Utah court set a preliminary injunction hearing for October 24, only to see ProBility appear, withdraw the motion for preliminary injunction and dismiss the complaint, which the court formalized on October 31, when it also dissolved the TRO. [October 31, 2017 Order Dissolving TRO; RJN, Ex. 3.]

On October 25, 2017, the day after the preliminary injunction hearing, ProBility filed a second proceeding ("Case II"), this time in the Superior Court of California for the County of San Diego. [October 25, 2017 Complaint in *ProBility v. Lawrence Isen, et al.;* RJN, Ex. 4.] On November 3, 2017, ProBility wrote to Alpine claiming that any sales of the Mesa shares would be unlawful. [Compl., Ex. G.] In Case II, ProBility never sought a TRO or preliminary injunction or any other accelerated determination that the sales were or would be unlawful. [*See* RJN, Ex. 4; RJN, Ex. 5, Docket for Case Num. 37-2017-00040451-CU-FR-CTL.] Instead, ProBility moved to dismiss Case II on December 20, 2017, and the court granted the motion the day it was filed. [Ex. 5, entries 13 and 16.].

Finally, on December 28, 2017, exactly three months after Alpine told ProBility it would honor any court order restraining the transfer of the Mesa shares, and two months after relinquishing a TRO and abandoning a motion for preliminary injunction, ProBility brought this case. To date, ProBility *still* has not sought a TRO, a preliminary injunction or any other expedited relief.

### III.

### ARGUMENT

**A.   Alpine Is Immune From Liability By Section 8115, Which Protects Securities Intermediaries And Brokers From Liability To A Person With An Adverse Claim.**

Plaintiff brings the following claims against Alpine: negligent misrepresentation (Claim 4), aiding and abetting (Claim 8), conspiracy (Claim 9) and unjust enrichment (Claim 10), along with a request for an order that Alpine (and all Defendants) surrender any ProBility stock certificates they are holding (Claim 11). [Compl., ¶¶ 118-127, 148-164.]

Plaintiff's claims are barred as a matter of law under Section 8115, which protects a securities intermediary or broker against adverse claims in connection

with its activities as a conduit for the transfer of securities on behalf of its customers. Section 8115 provides:

> A securities intermediary that has transferred a financial asset pursuant to an effective entitlement order, or a broker or other agent or bailee that has dealt with a financial asset at the direction of its customer or principal, is not liable to a person having an adverse claim to the financial asset . . .

All of the elements of Section 8115 are present. Under the U.C.C., a "securities intermediary" includes "(1) a clearing corporation; or (2) a person, including a bank or broker, that in the ordinary course of its business maintains securities accounts for others and is acting in that capacity." U.C.C. § 8-102(a)(14). As ProBility alleges in the Complaint, Alpine is a brokerage firm that acted as a conduit for Mesa's sales of ProBility stock. [*See, e.g.*, Compl., ¶¶ 14, 52.] No dispute exists that Alpine is a securities intermediary and broker for purposes of Section 8115. Further, no dispute exists that Alpine dealt with Mesa's ProBility common stock, *i.e.*, a financial asset, at the direction of its customer, Mesa.[3] [*See, e.g., id.* at ¶ 52.] Finally, ProBility purports to have an adverse claim to the same financial assets.[4] Section 8115 protects Alpine from ProBility's conversion claim, rendering Alpine not liable to ProBility as a matter of law.

As its comments reveal, Section 8115 protects securities intermediaries and brokers like Alpine from liability for conversion: "The policy of this section is similar to that of many other rules of law that protect agents and bailees from

---

[3] "Financial asset" means "(i) a security . . . (iii) Any property that is held by a securities intermediary for another person in a securities account if the securities intermediary has expressly agreed with the other person that the property is to be treated as a financial asset under this division . . . ." [U.C.C. § 8-102(a)(9).]

[4] "Adverse claim" means "a claim that a claimant has a property interest in a financial asset and that it is a violation of the rights of the claimant for another person to hold, transfer, or deal with the financial asset." [U.C.C. § 8-102(a)(1).]

liability as innocent converters." Section 8115, cmt. 2; see also cmt. 1 which provides examples showing how Section 8115 protects brokers who might otherwise be liable for common law conversion. This protection is afforded because "[i]t is essential to the securities settlement system that brokers and securities intermediaries be able to act promptly on the directions of their customers." U.C.C. § 8-115, cmt. 3. Thus, "[e]ven though a firm has notice that someone asserts a claim to a customer's securities or security entitlements, the firm should not be placed in the position of having to make a legal judgment about the validity of the claim at the risk of liability either to its customer or to a third party for guessing wrong." U.C.C. § 8-115, cmt. 3.

### B. None of The Three Exceptions to The Immunity Protections of U.C.C. § 8-115 Apply.

Section 8115 includes three exceptions to immunity, none of which apply.

#### 1. The first exception to Section 8115 does not apply because Alpine never took action after being served with a restraining order or injunction.

The first exception to Section 8115 immunity applies when a securities intermediary takes action "after it had been served with an injunction, restraining order or other legal process enjoining it from doing so." Section 8115(1). In its first communication to ProBility on September 28, 2017, Alpine told ProBility it would honor any restraining order ProBility obtained. [Compl., ¶ 54.] ProBility promptly followed Alpine's directive, and just one week later, on October 5, obtained the Utah TRO. [Ex. 2.] ProBility makes no claim that Alpine violated the Utah TRO while it was in effect, nor did it inform this Court that it had previously obtained a TRO.

Moreover, although in Case I ProBility obtained a TRO on October 5, it then dismissed that proceeding at the preliminary injunction hearing on October 24,

2017. [Ex. 3.]   ProBility then filed Case II and now this case, but did not obtain a TRO, preliminary injunction, or any other form of provisional relief.  Alpine could not have violated any TRO or preliminary injunction, and this exception does not apply.

ProBility alleges that its November 3, 2017 letter to Alpine [Compl., Ex. G], which it sent in conjunction with the second case ProBility abandoned, was an "additional effort to mitigate the dispute and minimize prolonged judicial intervention in the controversy forming the basis of this Complaint" [*Id.* at ¶ 61], wrongly suggesting that Alpine should have treated it as the equivalent of a TRO or preliminary injunction. The November 3 letter was sent *after* the Utah court dissolved the TRO and dismissed the case, and *after* Probility had initiated Case II without seeking any expedited remedies.  There was then no court order to violate.  At that point, all ProBility had was a letter from counsel, which obviously is *not* the legal equivalent of a TRO or preliminary injunction.

At best, the November 3, 2017 letter gave Alpine notice that Probility had not foregone its claims, but bare notice is not enough.  Section 8115's first exception "applies even though the securities intermediary, or the broker or other agent or bailee, had notice or knowledge that another person asserts a claim to the securities."  U.C.C. § 8115, cmt. 3.  As another California federal district court held, "a defendant intermediary or broker 'is privileged to act on the instructions of its customer or entitlement holder, unless it has been served with a restraining order or other legal process enjoining it from doing so.'"  *MyECheck, Inc. v. Sweetsun Intertrade, Inc.*, 2015 WL 6163456, at *3 (E.D. Cal. Oct. 19, 2015) (quoting Section 8115, cmt. 3).  That did not happen here.  As a matter of law, the first exception does not apply.

> **2.   The second exception to Section 8115 does not apply because Probility does not and cannot adequately allege Alpine colluded with the other Defendants.**

Section 8115's second exception applies only when the securities intermediary or broker "acted in collusion with the wrongdoer in violating the rights of the adverse claimant." Section 8115(2). ProBility does not allege that Alpine engaged in any affirmative acts other than executing its customer's instructions. Instead, ProBility claims that Alpine failed to make a reasonable inquiry into Mesa and knew or should have known about Isen's history, and that over three weeks before being contacted by ProBility, Alpine should have, on its own initiative, policed the ProBility-Mesa transaction and not asked the transfer agent to lift the restriction on the Mesa shares. [*See, e.g.*, Compl., ¶¶ 57-61, 122-23, 150.]

But this is exactly the type of conduct Section 8115 was designed to protect. What ProBility is arguing is that Alpine should have taken its side in the dispute, but Alpine cannot be held liable because—at least according to ProBility—it chose the wrong side.

Moreover, as even ProBility's allegations confirm, Alpine did not just have before it a request to deposit stock. It was armed with the arms-length Probility-Mesa settlement agreement and attendant court order approving it, along with an opinion of counsel that the transaction was lawful; as a securities intermediary it was not Alpine's job to police or second-guess that transaction once Probility began to have misgivings. *MyECheck v. Sweetsun Intertrade, Inc.*, 2015 WL 6163456 (E.D. Cal.), at *4. Instead, it was ProBility's job to get a court order and serve it on Alpine. ProBility did that in October 2017, only to then abandon its efforts.

The comments to Section 8115 make clear: "Knowledge that the action of the customer is wrongful is a necessary, but not sufficient condition of the collusion test." U.C.C. § 8-115, cmt. 5. "Mere awareness that the customer may be acting wrongfully does not itself constitute collusion." *Id*. Instead, collusion is found

only "in egregious cases where the action goes beyond the ordinary standards of the business of implementing and recording transactions, and reaches a level of affirmative misconduct in assisting the customer in the commission of a wrong." *Id.*; *see also* U.C.C. § 8-503(e), cmt. 3; Cal. Com. Code § 8503(e), cmt. 3 (proving collusion requires a showing that the "transferee from whom they seek to recover was affirmatively engaged in wrongful conduct").

Thus, absent allegations that the defendant took affirmative steps to assist a customer's wrong-doing, a plaintiff cannot adequately plead collusion simply by alleging the defendant, in executing its customer's instructions, ignored red flags of the wrong-doing. *H & R Block Financial Advisors, Inc. v. Express Scripts, Inc.*, 426 F. Supp. 2d 656, 662 (E.D. Mich. 2006). *H & R Block* involved conduct by a broker far worse than what ProBility alleges, but which was insulated by the safe-harbor provision of U.C.C. § 8-115.[5] In *H & R Block*, the court granted a motion to dismiss claims for conversion and fraud against H & R Block Financial Advisors, Inc. ("HRBFA") brought by Express Scripts' transfer agent, AST, which alleged HRBFA was liable to AST for losses incurred when HRBFA acted on its customer's instruction to sell valuable stock which AST mistakenly transferred to the customer.

Through a series of mistakes by AST, HRBFA customer Schwartze received a stock certificate for 150,000 shares of Express Scripts stock worth $7 million. Schwartze instructed HRBFA to sell the stock. HRBFA contacted AST by phone to check for stops or restrictions on the certificate, but did not alert AST to the suspicious nature of its customer's holdings. After the phone call, HRBFA sold Schwartze's shares and the proceeds were used for other investments. AST

---

[5] The court applied Mich. Comp. L § 440.8115, which is identical to U.C.C. § 8-115 and Section 8-115.

eventually discovered the mistake and a lawsuit followed where AST pursued conversion, fraud and other claims against HRBFA.

AST alleged that HRBFA "had no basis to believe that Schwartze had any right to and/or an ownership interest in the stock certificate," ignored and failed to inform AST of "glaring red-flags" and credited the customer's account "despite knowing, or recklessly disregarding the fact that she had no right to or ownership interest in the shares." *Id*. at 662-63. The court rejected the claim that allegations of HRBFA's failure to take affirmative steps were sufficient to plead collusion. Characterizing the argument as "clever" but "unpersuasive," the court held that it was not the broker's duty "to police whether the transactions recorded are appropriate" and "because the conduct was, at best, merely passive, it did not 'reach[ ] a level of affirmative misconduct in assisting the customer in the commission of a wrong." *Id*. at 663, (quoting cmt. 5 to Michigan's identically worded U.C.C. provision). The same reasoning and conclusions apply here.

In October 2015, in *MyECheck v. Sweetsun Intertrade, Inc.*, 2015 WL 6163456, the United States District Court for the Eastern District of California reached the same conclusion when it interpreted Section 8115 in a case against Alpine affiliate Scottsdale Capital Advisors. In *MyECheck*, the plaintiff stock issuer, relying on the second exception to Section 8115, argued that it could properly assert certain claims against a broker the issuer maintained ignored serious signs that shares of stock its customer deposited and which the broker cleared and sold were fraudulently issued. The court, quoting the U.C.C. commentary, noted that the second exception "is meant to carve out 'egregious cases.'" *Id*. at *4.

Finding the issuer's allegations inadequate, the court observed, "it can at most be said that [the broker] ignored red flags and overlooked suspicious circumstances, but undertook no affirmative misdeed." *Id*. The court also held

that the broker's failure to take protective steps after the plaintiff directly informed the broker of the fraud was not sufficient evidence of collusion: "Section [8115] and its comments repeatedly paraphrase the same rule: a securities intermediary or broker need not make legal judgments or police its customer's claims and is privileged to act on the instruction of one customer, even if it is aware of another's competing claim." *Id*. The same logic applies here.[6]

The Complaint fails to allege the affirmative conduct or make any other credible allegation falling within Section 8115(2) such that Alpine, a brokerage firm whose compensation was limited to receiving commissions, would have any reason to conspire or collude with an unaffiliated third-party to harm ProBility. The second exception to Section 8115 does not apply.[7]

---

[6] Lacking any evidence of affirmative misconduct, ProBility lists some regulatory proceedings against Alpine and affiliate Scottsdale Capital, and suggests that these proceedings should somehow have a bearing on Alpine's liability here. [*See* Compl., ¶¶ 14, 57.] These collateral matters do not involve the same timeframe, the same stock, the same transactions or any of the same parties to this proceeding. [*See* id.] They are irrelevant and offer no connection to this case, nor do they form the basis for any carve-out to Section 8115 beyond the three existing exceptions. They are offered merely to try to make Alpine look bad in the hope that the Court will be distracted from following Section 8115's clear instructions. The Court should not take the bait.

[7] Oddly, ProBility at one point contradicts its own allegations and claims that, on September 5, 2017, over three weeks before its first contact with Alpine, Alpine, along with Mesa, acted with notice of ProBility's July 28, 2017 letter to Mesa when Alpine (allegedly wrongly) sent instructions to VStock Transfer to lift the restriction on one of Mesa's ProBility share certificates. [Compl., ¶¶ 48, 50, Ex. E.] But the July 28 letter was sent only to Mesa, not Alpine. [Id. at ¶ 48, 53; Ex E.] Regardless, this does not solve Probility's problem because even assuming Alpine learned of the letter before September 28, Section 8115 still mandates dismissal because even with earlier knowledge, Alpine still had no obligation to police the transactions between the parties.

### 3. The third exception to Section 8115 does not apply because the stock Mesa obtained from ProBility was not stolen.

Section 8115's third exception applies when "a security certificate has been stolen" and the securities intermediary "acted with notice of the adverse claim." Section 8115(3). ProBility makes no such claim here. Thus, the third exception cannot assist ProBility either.

## IV.
## CONCLUSION

Pursuant to Section 8115 Alpine is immune from any liability to ProBility. Alpine respectfully requests the Court to dismiss the Complaint.

DATED: March 13, 2018    MURPHY ROSEN LLP

By: */s/ Paul D. Murphy*
Paul D. Murphy
Email: pmurphy@murphyrosen.com
100 Wilshire Boulevard, Suite 1300
Santa Monica, CA 90401

BASKIN RICHARDS PLC
Alan S. Baskin (*Pro Hac Vice Being Submitted*)
2901 N. Central Avenue, Suite 1150
Phoenix, AZ 85012
*Attorneys for Defendant Alpine Securities Corp.*